AULTMAN v. SALINAS.

1. LAW CASE—JURY TRIAL—WAIVER.—An action for the recovery of real property is an action at law triable by jury, but a jury trial having been waived in writing, it was properly tried by the court.

2. APPEAL.—A question not raised on Circuit is not properly before this court on appeal.

3. NEW TRIAL—FURTHER TESTIMONY.— Where an action at law, triable by the judge without a jury by consent of parties, is remanded by the Supreme Court for a new trial of an issue raised by the pleadings, but not passed upon by the Circuit Judge, there was no error in trying such issue at the new trial on Circuit on the testimony already taken in the cause, and not *de novo,* the Circuit Judge stating that he would receive further testimony if, in the progress of the trial, it appeared to him that additional testimony should be received.

4. IBID.—IBID.—Where the Supreme Court remanded a case "to the Circuit Court for the purpose of hearing and determining the question of homestead," the Circuit Judge correctly held this direction to be mandatory, subject to further testimony on the matter of homestead, if proper; and counsel should have offered such additional testimony if they wanted it.

5. LAW CASE—FINDINGS OF FACT by the Circuit Judge in a law case tried by him by consent of parties, cannot be reviewed on appeal.

6. HOMESTEAD—DAMAGES.—In holding that plaintiff could recover only two-thirds damages for real property worth $3,250, withheld from him by the defendant, because $1,000 thereof, as homestead of the grantor of defendant, could not be recovered by plaintiff, there was no error committed; exactness of figures will not be required in such cases.

7. IBID.—FRAUD AS TO CREDITORS.—A house and lot conveyed away by the head of a family in fraud of his creditors is a valid conveyance to the extent of his homestead right therein, that not being subject to the claims of creditors.

8. IBID.—REMOVAL FROM STATE—CASE CRITICISED.—The right of a purchaser to hold land to which his grantor was entitled as a homestead, and which he had the right to convey without regard to his creditors, is not affected by this grantor's subsequent removal from the State. This case distinguished from Trimmier *v.* Winsmith, 41 S. C., 109.

MR. CHIEF JUSTICE MCIVER *dissenting.*

Before GARY, J., Abbeville, June, 1894.

In this case, Hon. D. A. Townsend, Judge of the Seventh Circuit, sat in the place of Mr. Justice Gary, who had been of counsel in the cause. It was an action by C. Aultman & Co. against Caroline B. Salinas, C. Edward Salinas, and Anthony J. Salinas, partners as A. J. Salinas & Sons. For former appeals see 34 S. C., 559, and 41 *Id.,* 304. From a judgment in favor of defendants to the extent of the homestead conveyed to them by their grantor, the plaintiffs appealed on the following grounds:

I. Because his honor erred in holding that the judgment of the Supreme Court was mandatory, and that he had no right to take any further testimony. II. Because it was error to consider evidence given in a former trial of the case, without the consent of the plaintiff, said evidence having been given orally before Judge Izlar, and being no longer competent. III. Because it was error for the judge to hear the case over the objection of the plaintiff, it being a law case and the plaintiff having a right to trial by jury. IV. Because his honor erred in holding that it appeared from the testimony, that the property was sold under a judgment obtained upon a right of action arising subsequent to the ratification of the Constitution, whereas it appears from the pleading in the case that the property was sold under judgments older than that of the plaintiff, and that the proceeds of sale were applied to older judgments, which judgments were obtained on a cause of action which arose prior to the adoption of the State Constitution, and, therefore, not subject to the claim of homestead. V. Because it was error in the judge not to hold, that where property is sold by the sheriff under execution, the law refers the sale to the oldest judgment having a lien, and, therefore, that the sale should be referred to the judgment of F. M. Pope v. E. P. Matthews, as executor of Bud C. Matthews, deceased, which was a judgment against F. M. Pope upon a cause of action which arose prior to the Constitution of 1868. VI. Because his honor erred in holding that said property was the homestead of F. M. Pope at the time he conveyed the same to G. W. Connor, there being no evidence on that point. VII. Because his honor erred in holding that the amount of damages to which plaintiff was entitled was affected to the amount of one-third of the amount adjudged by Judge Izlar, the only evidence on that point being in the testimony of W. B. Utsey, as printed in the brief on the former appeal in this case, and his testimony there being that the property was worth $5,000. VII. Because it was error in his honor to hold that said homestead was ever conveyed out of F. M. Pope, said deed having been declared to be absolutely null and void in its entirety, and delivered up to the plaintiff cancelled. IX. Because where a deed is set aside for fraud, it

is as though it had never been, and while it may reinvest the
debtor with the right to claim homestead, it cannot give that
right to the fraudulent grantee, and his honor erred in not so
holding. X. Because his honor erred in not holding that the
claim of homestead was *res adjudicata*, not having been set up
in the answer of Mrs. Utsey in this case, and the defendants,
A. J. Salinas & Sons, being privies in estate of Mrs. Utsey and
being bound by her acts in the case. XI. Because the land
being worth more than $1,000, the judgment became a lien on
the land, and the purchaser would secure a title free from the
claim of homestead. XII. Because the evidence shows that F.
M. Pope, if he ever had a homestead in said property, has
abandoned the same by removal from the State, and the pro-
perty then became subject to the claims of his creditors, and
his honor erred in not so holding. XIII. Because the Supreme
Court having remanded the case to the Circuit Court for the
purpose of hearing and determining the question of homestead,
the plaintiff had the right to a hearing *de novo*, and it was error
in his honor to hold otherwise. XIV. Because it was held by
Judge Izlar in this case, and affirmed by the Supreme Court,
that the sale by the sheriff of the property in dispute, as the
property of F. M. Pope, cut out all intervening liens, and,
therefore, that the mortgage of the land by Mrs. Utsey to the
defendants, A. J. Salinas & Sons, was ineffectual to protect the
property in their hands, and it was error in his honor to hold
that they acquired any rights whatever under said mortgage.

*Messrs. Graydon & Graydon,* for appellants.

*Messrs. Frank B. Gary* and *S. C. Cason,* contra.

July 12, 1895. The opinion of the court was delivered by

MR. JUSTICE TOWNSEND. When the matters involved in a
former appeal in this cause were considered, this court discov-
ered that the Circuit Judge who heard the cause in the court
below had failed to pass upon the question of homestead, which
was clearly presented in the pleading, and to which issue testi-
mony had been offered; and that if this claim of homestead was
allowed, it would necessarily affect the other question of dam-

ages wrought to the plaintiffs by the defendants withholding possession from them of the house and lot in dispute. Hence this court remanded the cause "to the Circuit Court for the purpose of hearing and determining the question of homestead, and how far the amount of damages to which the plaintiffs are entitled may be affected thereby." This will appear by reference to *Aultman* v. *Utsey*, 41 S. C., 304. This branch of the action was called up at the regular June term, 1894, of the Court of Common Pleas for Abbeville County, in this State, while his honor, Judge Ernest Gary, was presiding. The plaintiffs sought a continuance upon the ground that the case would require some testimony. The judgment of the Supreme Court was handed down on 21st April, 1894, and the hearing of Judge Gary occurred some time in the month of June, 1894. It does not appear from the case that any showing was made before Judge Gary of any facts upon which the delay of plaintiffs' counsel to get ready for a trial might be excused. The presiding Circuit Judge in effect ordered the trial to go forward, and it was proceeded with. The testimony offered before Judge Izlar at the former hearing was considered. The Circuit Judge filed his decree on 25th June, 1894, sustaining the claim of defendants to the homestead of F. M. Pope, and also reducing the judgment of plaintiffs for damages to the sum of $233.34. From this decree the plaintiffs now appeal on fourteen grounds, which will now be considered.

The third exception imputes error to the Circuit Judge in hearing the cause over the objections of the plaintiffs, it being a law case, and the plaintiffs having a right to trial by jury. It is needless to pause very long in dismissing this ground of appeal. Unquestionably the plaintiffs, under our laws, have a right to a trial by jury. They likewise had a right to waive this trial by jury. This last they did in writing, and never asked leave to rescind such agreement, hence this ground of appeal is untenable.

By the thirteenth exception appellants insist that, the Supreme Court having remanded the case for the purpose of hearing the question of homestead, the plaintiffs had a right to a hearing *de novo*, and that it was error in his

honor to hold otherwise. It seems to us that the appellants did not raise any such question before the Circuit Judge. So far as the case shows, all that appellants did was to seek a continuance upon the ground that the cause would require some testimony. If they had had the testimony on hand ready for use, they would not have needed to continue the cause; they would have been ready to go to trial. If, without reasonable excuse, they had neglected to bring such testimony to the court for use at the trial, the fault was theirs, and they cannot now devolve their responsibility upon the Circuit Judge. However, the appellants contend that they had a right to a trial *de novo*. Let us see what were the surroundings of these two questions remanded by the Supreme Court for a new trial when Judge Gary took control of the cause.

The pleadings read before Judge Gary and Judge Izlar, respectively, were the same, and in defendants' answer the claim by them to F. M. Pope's homestead was distinctly made, and the testimony relating to the homestead was before Judge Izlar, but he failed to pass upon the issue. If he had done so, the Supreme Court would have acted upon his conclusions. It was because Judge Izlar had failed to pass upon the testimony and the pleadings that claimed homestead, that this court sent the cause back to the circuit with directions to try that question. To this extent the judgment of this court was mandatory. Hence when the cause was brought up before Judge Gary, he instantly recognized the purpose, and said that "the judgment of the Supreme Court was mandatory upon him to decide the question of homestead in the case as sent back to [by] the Supreme Court." The attention of this court is called to the additional language of Judge Gary: "But if, upon the further hearing of the case, it appeared to the court that further evidence should be received, the court would permit such evidence to come in." It is evident that the Circuit Judge felt that the judgment of the Supreme Court required that the Circuit Judge who should pass upon the question of homestead, should admit at the hearing before him, the testimony already taken in the cause, bearing upon and relating to the question of homestead, and that his rulings so impressed the minds of appellants'

counsel; and upon this, no doubt, appellants' counsel base their contention that the Circuit Judge denied to them the right of a trial *de novo*.

Ordinarily, in a law case, as distinguished from an equity case, when the Supreme Court orders a new trial, it is intended that such a trial shall proceed as if no other trial had ever been had, subject, of course, to any rulings of the Supreme Court on the appeal. Judge Gary recognized this. He read the judgment on the appeal and the Case, and from these he saw that what the Supreme Court required was, that the Circuit Judge should pass upon the one issue. All the others had been disposed of. Under the circumstances of this particular case, we do not see that the Circuit Judge erred, especially as he offered to allow additional testimony if, during the progress of the trial, its propriety was made manifest. No application was made therefor. Again, it must be remembered that the attorneys for all the parties to the cause had agreed that the Circuit Judge should hear and determine all the issues without the aid of a jury; thus largely assimilating the hearing before the Circuit Judge to that of the same officer sitting as a chancellor in an equity cause. Concerning the last, this court, in its recent decision in the case of *Cunningham* v. *Cauthen, ante*, 95, sustained this same Circuit Judge, while sitting as a chancellor, when he refused to hold it error in a special master who declined to hear additional testimony as to a matter which, by the judgment of the Supreme Court, had been recommitted with instructions to apply testimony once offered upon the question recommitted for consideration. As before remarked, it is the proper practice, when a new trial is ordered in a legal case, that the Circuit Judge should enforce a new trial *de novo;* but we think, for the reasons already indicated, that the circumstances of this cause make it an exception to such general rule. This exception is overruled.

The first exception here presented by appellants imputes error to the Circuit Judge in holding that the judgment of the Supreme Court was mandatory, and that he had no right to take further testimony. This exception embodies two propositions: First, that the judgment of the Supreme

Court was mandatory; and, second, that the Circuit Judge, under the Supreme Court judgment, could not take other testimony. There can be no doubt that the Circuit Judge properly construed the judgment of this court as mandatory so far as the question of homestead was concerned. It was mandatory to that extent; but appellants are mistaken as to the views expressed by the Circuit Judge on the second proposition, for he did not hold that he would not admit such testimony. In addition to this, we would call attention to the fact that appellants did not offer any additional testimony. Counsel should recall the language of this court in *Moore v. Railroad Co.*, 38 S. C., 33. It was there announced: "Now, it is contended, and the case does disclose, that one of the plaintiff's counsel, as the judge finished his charge, arose, and was in the act of addressing the court, when he was stopped by the judge with the remark: 'I cannot hear any argument, but if you have any request'— At these words counsel said: 'I have nothing more to say, sir.' It seems to us counsel stopped too quickly. He ought to have demanded his right to be heard—of course, in courteous terms—and then, if the judge refused to hear him, we would have most thoroughly considered his complaint. We take a decided stand on counsel's right to be heard in any court; of course, subject to the rules of law. We can have no sympathy or toleration for a practical denial of the rights of litigants, when the request of his counsel to be heard is made to the court (and refused); and in justice to the bench we are satisfied that no such attitude (to the bar) is ever occasioned knowingly. Still we would be understood in all frankness. If counsel had persisted, and then the court declined to make the proposed correction, we should have unhesitatingly upheld the rights and privileges of the bar." Appellants stopped short in the assertion of what they conceived to be their right, if they have additional testimony to offer, by not making an actual tender of such testimony. As the matter now stands, we are considering an abstract proposition of law that has no direct or practical bearing upon the matter at issue. The exception must be overruled.

Appellants, by the second exception, complain that the Circuit Judge erred in considering evidence given in a former trial

of the cause, without the consent of the plaintiff, said evidence having been given orally before Judge Izlar, and being no longer competent. We must be governed by the case. It nowhere appears therein that appellants' counsel made any such objection in the court below. Such being the condition of things, it is not competent for appellants to raise that question before this court for the first time. This exception must be overruled.

The next exception—the fourth—relates to the effect of certain testimony upon the mind of the Circuit Judge. We cannot, under the Constitution, enter upon the consideration of this matter in a law case. This exception must be overruled.

The fifth exception raises a question that does not appear by the case to have been presented to the Circuit Judge, nor passed upon by him. It is overruled.

The sixth exception complains that the Circuit Judge erred in holding that the property in dispute was the homestead of F. M. Pope at the time he conveyed the same to G. W. Conner. The testimony discloses the fact that Francis M. Pope occupied this house and lot as a family residence at the time he conveyed the same—7th December, 1886—to G. W. Conner. We refer to the testimony of W. B. Utsey. But the "Case" does not purport to contain everything that was before the Circuit Judge. This exception must be overruled.

The next exception—the seventh—alleges that the Circuit Judge erred in holding that the amount of damages to which plaintiffs (appellants) were entitled should be reduced by one-third thereof being deducted from the amount adjudged by Judge Izlar as due by defendants to plaintiffs as damages, as the only testimony looking to that result was that of the witness, W. B. Utsey, given in the former trial. The Circuit Judge had more than the testimony of Utsey on the matter here complained of. It appeared from several questions, that Mrs. Utsey paid Mrs. Pope, in cash, $3,250, for the property. The law allows $1,000 in land as a homestead. This last amount is $83 less than one-third of the $3,250 paid by Mrs. Utsey for the property. Mathematical exactness is scarcely

ever possible in these matters. Nearness in approximating is about the best that can be hoped for. The Circuit Judge has striven to reach this result, and we are not prepared to overrule his conclusion. This exception must be overruled.

Appellants' eighth exception imputes error to the Circuit Judge in holding that the homestead of F. M. Pope was ever conveyed out of said Pope, his deeds therefor having been declared fraudulent by this court. We think that the appellants lose sight of the distinction growing out of the fact, that Pope's said deeds were declared fraudulent only at the instance of his creditors. He himself never questioned said deeds. His creditors could only reach such of his property as was liable to levy and sale under execution against him. His homestead was never liable to such execution of his creditors, if their claims originated after 1868, when the Constitution was adopted, wherein such homestead was provided for as against creditors; therefore, Pope had a perfect right to convey away his homestead, so far as his creditors were concerned. This exception must be overruled. By the ninth exception the appellants raise somewhat the same question presented in the eighth exception, by suggesting that a deed set aside for fraud is as though such deed had never been made, and while such setting aside of the deed may revest the fraudulent grantor with title to his homestead, it cannot be made to so aid the fraudulent grantee. A patient consideration of the language used above in disposing of the eighth exception will show that this latter is also untenable. By the deed of Pope, he has rendered himself incapable of receiving any advantage from the transaction, for if we were to hold otherwise, he would be receiving a profit from his own wrong. Let this exception be overruled.

Appellants' tenth exception alleges that the claim of homestead is *res adjudicata*, not having been set up by Mrs. Utsey in this cause, and A. J. Salinas & Sons being her privies in estate, and being bound by her acts in the cause. No such question was presented to or passed upon by the Circuit Judge. It is too late to raise such question for the first time in this court. This exception is overruled. The eleventh

exception raises a question not considered by the Circuit Judge, and not presented to him. It must, therefore, be overruled.

Appellants' twelfth exception alleges, that if F. M. Pope ever had a homestead, he abandoned it by leaving the State, and it remains for his creditors. Counsel for appellants rely upon the recent case of *Trimmier* v. *Winsmith*, 41 S. C., 109, as authority for this proposition. When the two cases are compared, it will be seen how very different they are from each other. In the case at bar, F. M. Pope sold and conveyed his homestead while he was a resident of this State, and long after such sale removed from this State to that of Arkansas. In *Trimmier* v. *Winsmith*, the homestead was for the life of husband and wife. They both were dead, and there was no intervening purchase of the homestead when Trimmier enforced his judgment. Besides, there were other facts connected with that case which rendered it very different from the case under consideration. This exception is, therefore, overruled.

The last exception—the 14th—alleges that the Circuit Judge erred in holding that the defendants acquired any rights under this mortgage upon this house and lot, because Judge Izlar held—in which conclusion this court concurred—that the sale of such house and lot by the sheriff as the property of F. M. Pope cut out all intervening liens, and, therefore, the mortgage held by the defendants was cut off. No such question seems to have been presented to, or considered by, the Circuit Judge. All that this court did adjudge in the last case before it was subject to this right of defendants to have their right as to Pope's homestead considered, otherwise it was a nugatory act to order a new trial of this issue. This exception must be overruled.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE POPE. I concur, but desire to emphasize the distinctions pointed out by Judge Townsend existing between this and other law cases when a new trial is ordered. Here one single issue in a law case is remanded for trial by the Circuit Judge, whereas in other law cases the whole judgment is re-

versed, and a new trial granted. Of course, in the latter cases
the trial must be *de novo.* I fear this distinction escaped the
attention of Chief Justice McIver.

MR. CHIEF JUSTICE MCIVER, *dissenting.* Not being able
to concur in all of the conclusions reached by the Hon. D. A.
Townsend, who sat at the hearing of this case in the place of
Mr. Justice Gary, disqualified by reason of having been of
counsel in the cause, I will state briefly the grounds of my dis-
sent.

The first, second, and thirteenth grounds of appeal, in dif-
ferent forms, impute error to the Circuit Judge in the course
pursued by him in the hearing of the cause, when sent back by
the Supreme Court. For a proper understanding of the ques-
tions presented by these exceptions, it is best to state from the
record precisely what occurred. It seems that at the hearing
of a former appeal in the cause, reported in 41 S. C., 304, this
court, finding that his honor, Judge Izlar, from whose judgment
the previous appeal had been taken, had failed to decide or
even consider the question of homestead presented in the plead-
ings, sent the case back to the Circuit Court, for the purpose
of having that question considered and decided; the language
of this court, in reference to the question of homestead, being
as follows: "It does not appear that this question was consid-
ered by the Circuit Judge, or decided by him; certainly it is
not mentioned in the decision, and, therefore, it cannot be con-
sidered as properly before this court. * * * The case must,
therefore, go back to the Circuit Court, for the purpose of hear-
ing and determining the question of homestead, and how far the
amount of damages to which the plaintiffs are entitled may be
affected thereby;" and judgment was rendered accordingly.

From the "Case," as prepared for the argument of the pres-
ent appeal, it appears that when the cause was called for trial,
"The plaintiffs' attorneys stated that they were not ready for
trial, as the case would require some testimony. After hearing
the pleadings and the judgment of the Supreme Court, the
presiding judge, Ernest Gary, said that the judgment of the
Supreme Court was mandatory on him to decide the question

of homestead in the case, as sent back *to* (manifestly a misprint for 'by') the Supreme Court.   But if, upon the further hearing of the case, it appeared to the court that further evidence should be received, the court would permit such evidence to come in. No such evidence was offered at the hearing, and the cause was heard upon the evidence in the printed brief.   The case then proceeded to trial, by reading the complaint and answer, and the extracts from the testimony given on the former trial, which are put in this brief.''   It is due to the Circuit Judge that I should add that, in his order settling the "Case" for the present appeal, after directing such amendments as would make the statement read as above copied, the following language is used: "In other words, the reason assigned by the plaintiffs' attorneys for a continuance did not appear to me to be sufficient to grant the continuance asked for, and in consequence I ordered the cause to proceed to trial."

It seems to me from the foregoing statement, which I have endeavored to make as fully and fairly as possible, that the real question ·made before the Circuit Judge when the case was called for trial was—*not* the ordinary motion for a continuance upon the ground of the absence of witnesses—but whether the case should be heard on the testimony previously taken before Judge Izlar, without the privilege to either party to offer any additional testimony they, or either of them, might desire to adduce.   This is apparent from the fact that the "Case" does not show that any *formal* motion for a continuance was made, but simply a statement made by plaintiffs' attorneys that testimony would be required in the cause.   In response to this proposition the Circuit Judge, after hearing the pleadings and the judgment of the Supreme Court, said that such judgment "was mandatory on him to decide the question of homestead in the case as sent back (by) the Supreme Court."   That, it seems to me, necessarily implies that the case was not to be heard *de novo*, but upon the record "*as sent back.*"   Why the use of the term "mandatory" (for *every* judgment of the Supreme Court is mandatory), unless it was to signify, by the use of that term, that the Circuit Judge construed the judgment of the Supreme Court as positively directing that the Circuit Court should hear

the question remanded, not *de novo*, but upon the record as sent back. This view is confirmed by the succeeding language: "But if, upon the further hearing of the case, it appeared to the court that further evidence should be received, the court would permit such evidence to come in." This language plainly implied that the ruling was, that the case should be heard upon the testimony previously taken, unless it should appear *to the court*—not unless it should be desired by either party—that further evidence was necessary, in which event such evidence would be received. But as the "Case" does not show that the Circuit Judge gave any indication that further evidence appeared to him to be necessary, the attorneys for plaintiffs are not to be regarded as in any default in failing to offer any further evidence. Indeed, after the ruling above stated, if they had attempted to offer further evidence, their conduct might have been regarded as, at least, bordering on contempt, in disregarding such ruling.

The next inquiry is whether there was any error in such ruling. The well settled rule, as I understand it, is, that when a judgment of the Circuit Court is reversed, either in whole or in part, in a law case, and a new trial ordered of the whole case, or the part reversed, that such new trial must be conducted just as if there had been no previous trial; and hence the testimony as taken down at the former trial cannot be used except by consent on the new trial, and that the parties are at liberty to introduce any additional competent testimony upon such new trial that they, or either of them, may desire to offer; though testimony which has been taken by commission and used at the former trial may be again offered upon the new trial. See 16 Am. & Eng. Enc. L., 676, and the cases there cited: *Walton* v. *Bostick*, 1 Brev., 162; *Pulaski* v. *Ward*, 2 Rich., 119, and *Hosford* v. *Wynn*, 26 S. C., 130. Now as in this case the judgment of Judge Izlar, in so far as the question of homestead was concerned was reversed, and the case remanded to the Circuit Court for the purpose of having that question considered and decided, a new trial of that issue was ordered, which, under the rule above stated, should have been conducted just as if there had been no former trial; and hence there was error

in practically denying the legal right of the plaintiffs to offer any testimony upon that issue, which they might desire to offer, and in considering and deciding that issue upon the testimony previously taken before Judge Izlar; for in my judgment the testimony as previously taken was not admissible except by consent, and of such consent I find no evidence in the record. True, it does not appear that any objection was formally interposed by consent for plaintiffs, when it was offered in the form of the notes of testimony taken at the former trial; but under the ruling made at the outset of the trial, as I understand it, and as counsel for plaintiffs evidently understood it, such an objection would have been not only fruitless but also in open disregard of such ruling.

In the case of *Cunningham* v. *Cauthen, ante,* 95, which has been cited to show that the Circuit Judge was justified in declining to hear additional testimony, is not in point. In that case, which was a case in equity and not a case at law, as this is, the referee had charged the administrator with the premium on gold on the amount of all the notes taken at a sale made by him, simply because the advertisement of the sale stated that such notes should be payable in gold or its equivalent, and this court, in its former decision (41 S. C., at page 136–7,) held that this was error, and that the administrator should be charged only when it appeared that the premium had been collected by him, and the case was sent back simply for the correction of this error. The referee construing the decision of the Supreme Court to be a direction to reform the account previously stated in accordance with the views of that court, declined to hear further evidence upon the subject; and upon the second appeal the position was taken that the referee had erred in declining to receive further testimony, and this court, in disposing of the second appeal, after stating the question, used the following language, which may be found *ante,* at page 106: ''When the plaintiffs applied to the referee to be allowed to introduce new and additional testimony, the referee declined to hear it, and now this refusal is assailed as erroneous. In cases where new trials are ordered, of course such trials are *de novo.* But in a cause in equity, where the testimony on all the issues has been

fully taken and reported to the court by the very referee to whom the duty is confided of correcting a few among the many of his former conclusions, it does not seem that additional testimony could be admitted without the usual incidents to new testimony, namely: fresh questions, etc. We might have been more explicit in our former judgment, but, as it is, we think the referee correctly construed our decision. We did not mean thereby to open afresh all these matters."

It is manifest that in the case of *Cunningham* v. *Cauthen*, this court based its decision upon the ground that, under a proper construction of the former decision of this court, it was not intended to open afresh any of the issues in the case, but that the referee should simply reform the account in the single particulars indicated. But the present is a very different case. Here the Circuit Court has failed altogether to decide one of the material issues in the case, and hence a new trial of that issue was rendered absolutely necessary, and was ordered. Upon well settled doctrine, such new trial should have been *de novo*, and hence either party had the legal right to offer any testimony, otherwise competent, that might be desired; and such legal right could not be made to depend upon whether "it appeared *to the court* that further evidence should be received." And furthermore, upon such new trial the notes of testimony taken before Judge Izlar were not admissible, except by consent, and it does not seem to me that it can properly be considered that there was any such consent on the part of the plaintiffs. It seems to. me, therefore, that the judgment appealed from should be reversed and the case remanded to the Circuit Court for a new trial, upon which either party may be at liberty to offer any testimony, otherwise competent, upon the issue which was sent back to be considered and decided by the Circuit Court.

Under this view of the case, it certainly is not necessary, and would scarcely be proper, for me to consider any of the points raised by the grounds of appeal, going to the merits of the case, for, according to my view, such points are not now properly before this court.

Judgment affirmed.[1]

1 This case completes the cases of November Term, 1894.